Good morning your honors. This is really a simple case in many ways. It was a simple possession of a firearm by a felon and the question before the jury was whether or not that possession was unwitting. The defense was really quite clear and straightforward that the gun belonged to Mr. Sabate and that my gun into the trunk of the car by Mr. Sabate for Mr. Sabate. The major problem with the defense case was that they had absolutely no explanation for why Sabate would own a gun and why he would ask Mr. Mujahid to put the gun in the car. Wouldn't you say the more difficult problem were the recorded conversations involving your client? Well your honor, the recorded conversations were certainly of issue. They were certainly problematic. Mr. Mujahid got on the witness stand and he explained those references to guns. There's no doubt that Mr. Mujahid is not the nicest person in the world. There's no doubt that Mr. Mujahid had gun ownership in the past. He admitted that. The question was whether or not those references to guns meant that he possessed this gun on this occasion and he adamantly denied that he did. He makes specific reference in one of the calls to this particular gun being in the car. They're trying to figure out who would have told the police, who would have tipped the police off. They're speculating maybe it's this Sabate guy, maybe it's this Melanie person. I guess the reason I'm focusing you on that is that it seemed to me from a materiality standpoint, I just look at those recorded conversations and I think whatever information you think should have been turned over, how could it reasonably have made a Yes. Yes, I was. I believe that's March 9th of 2009. And that's when he loaded the package into the trunk. Right. And to your point, he explained his word choice, Mr. Mujahid did, when he testified. But there's also a question about why would he put a gun in the car? All the testimony was that he had been on pre-trial ankle bracelet release. He had electronic home monitoring. He couldn't go anywhere. The only place he could go, and he was going, was to court for this hearing in which his bond might be revoked. So there should have been a big question in the jury's mind. Why in the world would he put this gun in this car? What the jury didn't hear was that Mr. Sabate had a strong reason to own a gun. That he was involved in prostitution and drugs. And the courts have routinely recognized the connection between prostitution, drugs, and guns. Yeah, that's a very general connection. And of course, anything that could have come out about Sabate on that would have likely implicated your client as well. Absolutely. There's a potential effect on Mr. Mujahid's case. And the defense lawyer would have to make that considered judgment. But the prosecutor withheld that information, didn't allow the defense counsel to make that considered judgment, weighing the pros and cons of presenting this evidence. The trial counsel testified in this case, and he testified he was very reluctant to call Mr. Sabate. And he and his client actually had a disagreement over whether Sabate should be called. That's correct. And does anything that has come out since then, if the trial counsel had known that, does anything improve the case for calling Mr. Sabate? Absolutely. What improves the case? What improves the case is that through the cross-examination of him, or through the examination of the officers, who actually testified in this case that were the same officers who observed shortly before this incident, observed Mr. Sabate taking prostitute to an interaction, was involved in the sex trafficking. That evidence was withheld from Mr. Mujahid. That just goes largely to credibility. And Mujahid then would have been implicated because Sabate was working for him. Your Honor, respectfully, I do very much disagree with the notion that it only goes to his credibility. I think it very much goes to the question of why would Sabate own a gun, and why would he ask Mr. Mujahid to put this package in the car? Because this is what he did. He drove around with girls to deliver them to acts of prostitution, and he delivered drugs to them. And this would provide, this evidence that was wrongfully withheld from the defense, would have provided an explanation, a reason, as to why Sabate would have done what he did according to Mr. Mujahid. And this is the defense counsel's bread and butter. This is what you have to do, is connect the dots of doubt to reason. And these are reasons to believe what Mr. Mujahid said. Can I ask you this? Is it right to say that the evidence was withheld when it was actually within your client's own knowledge? Your Honor, I understand where you're coming from with that question, but I don't think that the arrest of TJ in February was anything that was within my client's knowledge or her testimony. And we're talking about ways to prove facts that would have been impactful on a jury. Two of the police officers who were involved in the arrest of TJ and Mr. Sabate back in February, a month before or three weeks before this incident, they testified. They could have been asked on cross-examination about this evidence. Mr. Mujahid did not have this evidence. And that's, and so there was a wrongful withholding. Because when you were responding before to Judge Bybee's question about why this evidence went to more than just credibility, you stressed that the jury needed to be apprised of the fact that Sabate had a reason for owning a gun. And it seems to me most of what you said in response to Judge Bybee's question, he was involved in this, he was involved in that. He needed protection. Your client knew about all that, right? So I'm not sure that whatever marginal benefit you, not you, but trial counsel, would have obtained by getting this additional information, I guess, about TJ's arrest, whatever. It doesn't seem to me it's that, I don't know, again, for just measuring materiality, it doesn't go that much beyond what your client already knew and the advantage to which his lawyer could have put that information. Your Honor, I realize that there was evidence not brought out in court alleging that Mr. Mujahid was involved with Mr. Sabate in sex trafficking and providing drugs to prostitutes. There were charges. Those charges were dismissed. The nature and extent of that relationship between these two people, what Mr. Mujahid may have known or not known, is not anything that is evidence in this case. I realize that there's a natural assumption that Mr. Mujahid is guilty of these other things. But those cases were dismissed against him. And he was in custody. Did the government raise any of these questions when Mr. Mujahid was put on the stand? They asked him about the sex trafficking? No. There was discussion about... Why would you want to open that one up? Even though the government wasn't prosecuting him, why would you want to open up a whole new line of bad acts? Well, Your Honor, as a lawyer who's tried many cases, there's times when you simply have to accept the bad. And there was plenty of general bad about Mr. Mujahid that came out in trial. As the Court noted, the tape recordings were clearly indicative that Mr. Mujahid was involved in a variety of bad acts, that Mr. Mujahid had guns on prior occasions. So to let a bit more in, because it connects the dots and makes the case, the defense, so much stronger when you have an explanation or reason for why Mr. Sabate would have asked Mr. Mujahid to put the package in the car because he was going to go take girls around or get drugs or whatever it was that he was doing, those are the tough decisions defense counsel have to make all the time. And defense counsel, including myself, often make those decisions in favor of deal with the bad. You've already got a client that the jury may not like, this court may not like, but he is entitled to the same respect, the same due process rights that the Alaska State Representative and Senator Stevens was given. And that's all we're asking for those same constitutional rights to apply. I will reserve the rest of the time, although I... Could you just spend a minute on the uncertified issue that you've asked us to take a look at? Yes, and I'm glad you asked me that question, because the court below never dealt with this question of the prosecutors specifically suborning perjury in my estimation. When they asked, is the whole deal that you were... It wasn't the whole idea, I think. The whole idea, excuse me. The whole idea was, in your cooperation, was to reduce your sentence on the providing ammunition charge when they well knew that his whole idea was far broader than that. Can you just remind me, what was Savati's exposure on the ammunition charge versus the other pending charges? I believe it was a five-year charge. And what were they threatening him with on the sex trafficking and drug trafficking charges? The testimony of AUSA Cooper was that he was looking at at least a 10, if not a 20-year mandatory minimum. Thank you. I will reserve the rest of my time. Okay. Thank you, Mr. Engelhardt. Ms. Heller? Good morning. May it please the court. I'm Kirby Heller for the government. The government did not violate Mr. Mujahid's due process rights under the Brady line of cases because none of the undisclosed information about his neighbor, Greg Sabote, exculpated Mr. Mujahid. And it certainly was not material. When you look at, and certainly the court's questions indicate this, when you look at the information that was undisclosed, it didn't go to Mr. Mujahid's innocence. He worked for Mr. Mujahid. The information that was in fact was in Mr. Mujahid's knowledge that he was an errand boy. He would on occasion drive the prostitutes to the commercial sex acts. One of the victims, TJ, testified in the grand jury that when Mr. Mujahid was wearing an ankle bracelet and he couldn't pick up the crack for the prostitutes or the dealers wouldn't deliver it to his home, he would send Sabote to pick up the crack. None of that information exculpates Mr. Mujahid. Well, what about the question of reason to have a gun? Well, we believe that that isn't even potentially exculpatory for two reasons. One is simply it's far too attenuated. There was no information that Sabote carried a gun when he was driving the prostitutes to the sex acts, that he carried a gun when he delivered the crack at Mr. Mujahid's request back to the house. It's just a very generalized assumption that drug dealers or those involved in sex trafficking carry guns. There should be at least something more temporally connected or spatially connected, and there was none of that. The second reason why we don't believe that motive is exculpatory is it applies with even greater force to the defendant and wouldn't exculpate him. He also had a motive, if that's the theory, to have a gun. And in fact, TJ testified in the grand jury that Mr. Mujahid had threatened to shoot her if she left him. Also, if anyone had a motive to have a gun, it was the defendant in this case. So we don't believe that that was potentially exculpatory. We certainly don't believe that it meets the materiality test, even if it had been disclosed and come out. Would it have been admissible? What would have come out? What would have come out is, yes, this witness was an errand boy for the defendant, but in fact, he did all of these things at Mr. Mujahid's address. What about the Giglio argument that he was really facing a lot greater danger that would affect his credibility? Well, that's a separate question. Yeah, that's what I know. Let me turn to that. Yes, that's the Giglio question. It's our position, again, that there was no due process violation for two reasons. One is that he was a defense witness. He wasn't the government's witness, and that Giglio doesn't apply to defense witnesses. And the second, again, is that it wasn't material. As to the first, the government didn't call. There was a moment when the government called him and then took back her plan, and Mr. Mujahid called him. He called him knowing that Sabote was cooperating with the government and knowing that he would also inculpate him, but he brought out certain exculpatory information that the defense obviously reasoned or Mr. Mujahid persuaded the defense counsel to believe was important exculpatory information. The government did not have an obligation to disclose impeachment information about this defense witness because it wasn't favorable to the defense. It would have called into question the credibility of someone who was a defense witness and not aware of any case that has ever said the government has to disclose such information. Secondly, we don't believe that the information was material. As to the sex trafficking and to the allegation of transporting the drugs, that doesn't go to truthfulness, which is what an attack on credibility should do. As to the tax fraud allegation, again, that does go to truthfulness, but if Mr. Mujahid had tried to impeach Sabote with that information, it would have come out that he did it again at the behest of the defendant. And the only information that, in fact, Sabote did on his own that did go to credibility was this hurricane relief fraud, and we believe that even if the government had an obligation to turn over such information, which we don't think it did, it would have been merely cumulative. Sabote was impeached from many sources. He lied to the FBI when he was first questioned. He was using drugs. He was misusing prescription drugs, that is, getting it without a prescription. He admitted that he had used crack in the past. He, of course, was charged with the crime. So he was impeached, and we don't believe there's an issue. You see that the sex trafficking thing and some of the other drug use doesn't go to credibility, but I think the argument is that he was facing a much greater threat of potential prosecution, which may go to credibility. What would go to credibility is the agreement, and whether he had an agreement, and he was trying to save himself by doing that. Again, we don't believe, well, first of all, we don't believe that the government was required to disclose that, and what's interesting here, I think, is that the reason is, as a defense witness, the government chose one reason not to call him, because as the prosecutor said at the hearing, she didn't have her arms around all the Giglio information. She knew about this hurricane fraud, and she didn't want to violate a due process right of the defendant, so she chose not to call him, and it would seem rather strange to then say, if the defense chose to call him, then she would be forced to violate Giglio. It was really a very, she was doing the right thing. Let me ask you about something where I don't think the AUSA did the right thing, and that's the very leading question put to Mr. Sabote about the benefits that he expected to receive, right? Because it seems real clear to me that the AUSA knew that Sabote was, in fact, trying to get a benefit on the sex trafficking and drug trafficking charges as well, and yet deliberately left the impression with the jury that the only benefit he was seeking was a lower sentence recommendation in the ammunition case. So I'd like to hear you address, I know that's the uncertified issue, but I'm troubled by that, and I'd like to hear your response. And again, just let me say one thing about the uncertified issue, Your Honor. We didn't brief it, and if the court wants to hear more from us, I'd be happy to do that. That's why I'm asking to see if I want to request you to brief it. Well, I don't believe that the prosecutor deliberately tried to mislead the jury. I think by her question, she was trying to clear up what Sabote had said in his direct, which is, I hear I'm going to be blamed for this, I want to come in, basically, and clear my name. So she wanted to bring out that, in fact, he didn't have a plea agreement at the time, he had been given immunity for his debriefing, which only went to the gun charge. Nothing had been... Well, no, because we have the AUSA's notes, right? And she herself noted that he was seeking, basically, to get a pass on all of the sex trafficking, right? And so... He was... And he was looking at much greater time with respect to those charges than he was in the ammunition case, right? Right. He was seeking that, but he had been, the lawyer had been told, we're not giving you a pass for that, we're not going to even deal with that, we're dealing with this gun charge, and we'll see. So, all the... What the prosecutor was really trying to do was make sure that the jury understood that when Sabote was testifying, that, in fact, he was doing it to get a benefit for what he had been charged with, and she really wanted to clear that up. And then, of course, the court did give this cautionary instruction that told the jury, consider his testimony with caution, and also, he hopes to get a benefit. Well, maybe you need to run through that with me again, because I'm not sure I followed you. I guess I thought at the time of the, certainly of the debrief, when the AUSA is taking the notes, right, Mr. Sabote, he's certainly requesting and hoping to get a benefit on the other charges, right? Yes. Okay. And so, by the time of trial, are you saying that he had no expectation whatsoever that his testimony in Mr. Mujahid's case might confer some benefit on the other charges? He shouldn't have had that expectation, because he had been told, his lawyer had been told, both by the trial prosecutor and Mr. Cooper, that they weren't ready to deal with that, that we are going to start with his cooperation on the gun charge and see where it goes. Yeah, but telling him that he doesn't have any sort of immediate deal is very different from telling him that he won't have any deal in the future, because it may create the possibility that if he's a good boy on the stand, that they will decide to bless him in some way in the future, even if he doesn't have a current agreement for that. He didn't, yes. That's true, Your Honor. What he knew is he certainly wasn't getting a pass, that he had been told, and anything was really hadn't been decided. The government didn't know what his role was in the sex trafficking. That investigation was beginning, and his debriefing had just started. Let's assume that in his mind, it was not unreasonable in his mind to think that if he said good things on the stand, that the government would like to reward him at some point in the future. And basically all that means is that the government hadn't closed down the possibility and if that's the case, what should the government have disclosed? There are two different issues. As to a giglio obligation, if he had been a government witness, we probably should have disclosed the fact that he is hoping to get favorable treatment on this investigation. As to the NAPU violation, though, I don't believe that the government knowingly presented perjure testimony by asking the question. Maybe it could have been asked in a clearer way, but really... But the question was the whole idea, right? That's the key phrase. And that's not true. I mean, you have to concede that, right? That was just flat-out incorrect. He was seeking, at least what was in play, was a benefit not to him, not just in the ammunition case, but into these other much more serious charges, right? So it wasn't accurate for the AUSA to put the question in a very leading fashion to him to say that the whole idea of you being here and giving this testimony is just to get a benefit in the ammunition case. Well, again, I think she was asking in a leading way because he had not testified entirely correctly on direct. So... But I think at that point, the whole idea for him at that point was, in fact, to work down his sentence, get a 5K letter for the charge that he was facing. Again, whether... It wasn't, but I guess I'm... Sorry to keep interrupting you, but I'm really troubled by this. It wasn't the whole idea. It was part of the idea, right? Maybe the smaller part in Mr. Zabote's mind, because he was looking at, what, five years on the ammunition charge? I believe so. 20-plus years on the sex trafficking and drug trafficking charges? I mean, I guess it would be one thing, I suppose, if Mr. Zabote had sort of inartfully phrased the deal he was seeking in his own words in this way. But this is from the AUSA's own mouth, and we have her notes shortly before trial that reflect... It wasn't even some other prosecutor's knowledge. It was the AUSA's own knowledge. So when he answers, yes, Ms. AUSA, that is the whole idea, that was false testimony, and it left the impression with the jury that the benefit he was after, which was much smaller, than what, in reality, it actually was. Well, again, I believe those are the two different questions. Whether she knowingly put on perjured testimony by asking this question, I would say that her testimony from the evidentiary hearing would indicate that she didn't mean to mislead the jury. She meant to, in fact, correct the record. From her testimony, she believed that she had shut down the idea of, you're not getting a deal now on the sex trafficking. As to the impeachment value, again, if he had been a government witness, I do believe that his hopes, unreasonable as they might have been, could have been disclosed. But we're not talking about the AUSA's intent, right? It's just whether she knew that the testimony that she had just elicited was false. And I'm, I guess, struggling to see how you can explain on this record that she didn't know that the testimony she had just elicited from the guy wasn't false. Again, all I can say is in context of what she knew from the plea discussions and what she had knew from, and what Mr. Cooper knew, that Sabote knew that the only promise he had been made was to testify to get credit against the case he was charged with. And nothing else was really on the table at the time, so that it wasn't, maybe she could have asked the question more artfully, but given that she didn't believe that there should have been an expectation about the sex trafficking based on what he had been told that she wanted to get out, that he in fact was cooperating, which hadn't really come out accurately. Thank you. Mr. Engelhardt, you have time remaining. Very quickly, Your Honors. Government again ignores Brady and Kiles v. Whiteley. Both are cases where there was no witness that testified at trial regarding the withheld evidence. And yet, they continue with this argument that somehow because they didn't actually call Sabote to the witness stand, that they didn't have some duty to disclose. And in fact, they argue today that she did the right thing. Well, Your Honors, she did not do the right thing, the AUSA in this case. And there's no clearer showing of that than the email that was that she received from AUSA Cooper back on April 1st, a couple months, a few months before the trial, where he makes it really clear by a very quick point-by-point enumeration of why Sabote is in deep trouble. Because he's buying ammo. Because he's driving women to their dates. Because he provided them with drugs. Because he made false claims and received $16,113. She saw that email. They all knew that he, that Sabote was in deep trouble. That's why Sabote was cooperating. That's why it was suborning perjury to say that the whole idea was just to get a lower sentence on the ammunition charge. And when she testified in the evidentiary hearing, that she withdrew having Sabote testify because she didn't have her hands around Giglio, she realized at that point. Now, the government makes it sound like that's somehow a good thing what she did there. I submit that it's a tacit admission that she knew at that point she was over her head. She had gone down a road in this case of non-disclosure of all of this information that was right in front of her on this April 1 email from her colleague. She had every ability to get to the bottom of that and do what is her ethical duty to provide Brady Giglio material to the defense and to not suborn perjury. Thank you. We thank both counsel for the argument. The case is submitted.
judges: Canby, Bybee, Watford